*Orphans' Court, Dauphin County, December 22d, 1865.*

### IN THE MATTER OF HAINES'S ESTATE.

Two administrators can only demand the compensation that would have been
 paid to one, for although they may be involved in more trouble, yet the
 estate is not settled any better or quicker by two than by one.
They will not be allowed commissions for collection of debts due by them-
 selves to the intestate.

BY THE COURT.—Although disposed to place great confi-
dence in the judgment of the auditor in the present case and de-
fer to his opinion, yet after a full and careful examination of the
account, I am obliged to come to a different conclusion in regard
to the administrators' compensation.

There are two persons engaged in the business, yet they must
receive no greater allowance than if it had been performed by
one only. They may have had much more trouble and incurred
greater expense than one intelligent business man would, yet the
estate will be no better or more safely settled. Many journeys to
Sunbury and Bloomfield may have been made, yet if they were
measurably unnecessary the estate should not pay the expense.
This decedent was comparatively wealthy and had no descendants
to inherit his property, yet no greater allowance can be made to
the administrators than would have been had he left a dozen chil-
dren, or his estate proved insufficient to pay his debts. In fact
the risk and responsibility would have been much greater in the
latter instance than in the one under consideration. Had all of
the debts due to the decedent been collected and paid over the
charge would not have been so much out of the way, but as the
business now stands, either another account will have to be set-
tled by the present administrators or a new one raised for the
purpose. In either case additional compensation can be claimed,
and must be allowed.

A bare percentage, such as is ordinarily awarded for settling
an estate if computed on the money received and paid over, may
be insufficient in the present case, as trouble was incurred and
some litigation transpired, yet the most of the claims were large,
and their collection, if we may judge from the sums paid to coun-
sel, collected through their instrumentality. Four thousand seven
hundred and fifty dollars were debts due by the administrators,
on which no percentage can be allowed. Nearly fifteen thou-
sand four hundred dollars consists of claims against insolvent
debtors, or of debts remaining uncollected. The whole debit side
of the account amounts to $33,240.89, and $20,146.55 is com-
posed of the administrators' debts or uncollected claims, leaving
$13,094.34 to pass through their hands, including their own
compensation, and $400 of attorney's fees. They claim to have

[In the Matter of Haines's Estate.]

made many trips to Northumberland county to attend to law-suits, most of which must have been unnecessary and would not have been taken by men who understood business, yet it was not very expensive, as it was not over two hours' ride in the cars from where they lived, and most certainly it was unnecessary for more than one to go on any occasion.

They also speak of expenses in trying to learn the circumstances of Henry M. Baird, yet almost any public man in the county could have informed them with reasonable certainty, and if it was desirable to make further inquiry it could readily be done by letter, and probably was so done, as neither state that they visited either city or his residence to look into his affairs.

We find it difficult to understand how the reception of the coin could have thrown much burden upon the administrators, for if deposited in any bank in this place it would have been removed with its own treasure to the city of New York, where all was sent at the time of the rebel invasion. We are not aware that any of those having special deposits were required to remove them, though it may have been demanded of persons who committed plate or valuable papers to the safe-keeping of the banks. A place of concealment of greater safety could readily have been found in the neighborhood of the administrators rather than in any bank in the city of Philadelphia, had the rebel army prevailed in the battle of Gettysburg. No expense need have been incurred on account of the specie. It appears strange that so much serious litigation existed in Northumberland and Perry counties, where we find but five dollars paid to W. Packer, who, they say, attended to it in the former, and a like sum to Mr. Junkin, who conducted it in the latter county. Possibly the administrators transacted the business in person and thus saved attorney's fees to the estate. A course must be adopted by the courts which will secure a fair remuneration to executors and administrators, but we must not permit estates to be plundered, nor can the same allowance be made for services but half rendered, which should be for those fully performed. Administrators cannot be paid for leaving debts uncollected. We are inclined to think that one thousand dollars would be a full remuneration for settling this estate so far as it has been done by these administrators, yet lest by any possibility they shall not be thereby fully compensated we will reduce their charge but five hundred and fifty dollars, thus allowing them eleven hundred for their services. With that correction the account will be confirmed.